UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

ONEBEACON INSURANCE COMPANY,

                 Plaintiff,

  - against -

FORMAN INTERNATIONAL, LTD., FORMAN
INTERNATIONAL, LLC, and WAYNE FORMAN,

                 Defendants.

-----------------------------------------X

04 Civ. 2271 (RWS)

O P I N I O N

A P P E A R A N C E S :

    COZEN O'CONNOR
    Attorneys for Plaintiff
    45 Broadway Atrium, Suite 1600
    New York, NY 10006
    By:  DOUGLAS B. FOX, ESQ.
         Of Counsel

    PIPER RUDNICK GRAY CARY
    Attorneys for Defendants
    1251 Avenue of the Americas
    New York, NY 10020-1104
    By:  DOUGLAS A. RAPPAPORT, ESQ.
        JOSHUA S. SOHN, ESQ.
         Of Counsel



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/15/06

**Sweet, D.J.,**

Defendants Forman International, Ltd. and Forman International, LLC ("Forman") have moved pursuant to Rules 37(a)(2)(B) and 45(e), Fed. R. Civ. P., to compel the production of documents withheld as privileged by plaintiff OneBeacon Insurance Company ("OneBeacon") and its attorneys Cozen O'Connor ("CO'C"). For the reasons set forth below, the motion is granted in part and denied in part.

## Prior Proceedings

The complaint in this action was filed on March 22, 2004. A motion to dismiss by Forman was determined in an opinion of January 20, 2005 (the "January 20 Opinion"). An amended complaint was filed on February 28, 2005, and discovery proceeded.

The instant motion to compel was heard on June 14, 2006.

## The Facts

The facts set forth below are taken from the parties' submissions and do not constitute findings by the Court.

In early 1999, Forman and OneBeacon's corporate predecessor, CGU, executed a Broker Agreement dated January 1, 1999 (the

1

"Broker Agreement").   The Broker Agreement set forth the parties' relationship and, according to Forman, provided that in negotiations regarding potential coverage, Forman would serve as the agent and representative of potential insureds.

### 1.   Century 21's Insurance Coverage

Forman approached OneBeacon regarding general casualty insurance coverage for Century 21, which owns and operates department stores in the metropolitan New York area, including a store 150 feet from the World Trade Center.   Century 21's insurance consultant, Stephen Gerber ("Gerber"), provided "specifications" setting forth a proposed business interruption ("BI") provision that appeared in Century 21's then-current insurance policy.

On July 13, 1999, Gerber asked Forman, who in turn asked OneBeacon, to "please confirm that the entire business interruption section of my property specifications will be endorsed on this policy." OneBeacon responded to other items raised by Gerber, but did not object to the inclusion of the BI provision set forth in the specifications.   However, on or about August 20, 1999, OneBeacon issued an insurance policy to Century 21 (the "Policy" or the "Century 21 Policy") which did not include the BI provision set forth in Gerber's specifications.   Rather, the Policy set forth a blanket limit of $200 million per occurrence with a $100 million limit per occurrence for lost BI income.

2

On June 6, 2000, OneBeacon received a copy of an insurance binder issued to Century 21 that provided: "[d]elete entire CGU business income form . . .   The only BI wording on the policy should be our 'Loss Determination' as provided."

As a result of the terrorist attacks of September 11, 2001, Century 21's department store near ground zero suffered physical damage that interrupted its business operations.   Century 21 subsequently submitted claims to OneBeacon totaling more than $238 million, including at least $162 million for BI losses. Century 21 based its claim in part on its belief that the crashing of two planes into the Twin Towers constituted a two-occurrence loss entitling it to twice the Policy limits.

On September 27, 2001, OneBeacon estimated that Century 21's "potential gross loss" appeared to be between "$90M and $140M."   On or before October 29, 2001, OneBeacon apparently established a $150 million "case file reserve" to account for its anticipated liability for Century 21's loss, including $100 million for lost BI -- the Policy's one-occurrence limit.

On or before October 1, 2001, OneBeacon apparently retained Richard Mackowsky ("Mackowsky"), an insurance partner at CO'C, to become part of it's Adjustment/Settlement Team to investigate, measure, negotiate, and pay the claim submitted by Century 21.   The Adjustment/Settlement Team: (1) collected factual

information about the claim; (2) met with OneBeacon's underwriters, outside adjusters, accountants and consultants; (3) met with Forman's principal, Wayne Forman; (4) met with Century 21 as well as its consultants and attorneys; (5) analyzed the coverage aspects of the claims; (6) measured Century 21's loss; and (7) eventually approved payment to Century 21 of $143 million.    The Adjustment/Settlement Team apparently discussed the relevant information through a series of e-mail messages and other documents.

During the claims-adjustment process, several significant coverage issues arose, including the contentions that Century 21's loss constituted two occurrences entitling Century 21 to twice the Policy's limit (i.e., up to $400 million in total, including $200 million for BI alone), that New York's statutory interest rate of nine percent was applicable to any legitimate claims not paid within thirty days after the submission of a proper proof of loss, that OneBeacon's decision not to renew the Century 21 policy during the claims-adjustment process strengthened the possibility that Century 21 could assert extra-contractual claims against OneBeacon, and that OneBeacon was liable to the extent of all the BI loss.

On March 23, 2003, OneBeacon entered into a settlement agreement (the "Settlement Agreement") with Century 21 in which OneBeacon agreed to pay a total of $143,004,849 in exchange for a full release.

4

The Amended Complaint has alleged that OneBeacon was forced to overpay Century 21's insurance claim by some $52.4 million because Forman improperly agreed, on Century 21's behalf, to delete OneBeacon's standard BI provision in favor of the BI provision proposed by Century 21.

## 2.   The Document Requests to OneBeacon

Forman served OneBeacon with its first set of document requests, dated May 31, 2005 ("Forman's First Request"). Forman's First Request sought, among other things, all documents relating to:

- Century 21's submissions of claims for business interruption insurance coverage following the [terrorist attacks] (Req. 15);

- Any dispute between OneBeacon and Century 21 concerning Century 21's insurance coverage under the Policy (Req. 16);

- Any dispute between OneBeacon and Century 21 concerning the BI language in the Policy (Req. 17); and

- OneBeacon's decision to resolve its dispute with Century 21 regarding coverage under the Policy (Req. 18).

(Rappaport Decl. Ex. 24.)

On July 29, 2005, OneBeacon served objections and responses to Forman's First Request and directed Forman to Century

5

21's Policy, underwriting file, and claims file. In its responses, OneBeacon asserted that the attorney-client and work-product privilege protected all other responsive documents. At that time, OneBeacon did not provide a privilege log identifying those documents.

On September 23, 2005, Forman served OneBeacon with a second set of document requests ("Forman's Second Request") seeking:

- OneBeacon's internal underwriting guidelines, policies, practices, or procedures that were in effect between 1999 and 2001 (Req. 1);

- OneBeacon's analysis and computation of the loss incurred by Century 21 (Req. 7);

- Century 21's claim under the Policy (Req. 8);

- Payments made by OneBeacon to Century 21 (Req. 11);

- Computations of loss incurred by Century 21 calcu-lated under Century 21's proposed [BI] provision (Req. 12); and

- Computations of loss incurred by Century 21 calcu-lated under OneBeacon's standard [BI] provision (Req. 13).

(Rappaport Decl. Ex. 26.)

On October 25, 2005, OneBeacon responded to Forman's Second Request by representing that all "discoverable portions of the claims file are being assembled and will be produced."

6

OneBeacon refused to produce additional responsive documents beyond the Century 21 claims file.

On December 21, 2005, OneBeacon provided Forman with a privilege log which was accompanied by additional documents. The parties exchanged correspondence and met face-to-face between December and March concerning OneBeacon's discovery responses. On March 3, 2006, OneBeacon produced additional documents along with a "Revised Privilege Log" (the "Revised OneBeacon Log").

The Revised OneBeacon Log provides the Bates numbers, the document type and the privilege asserted. For certain entries, OneBeacon does not describe the subject matter of the communication contained in the document. Certain entries for e-mails withheld or redacted contain no date or time.

## 3.  The Subpoena to CO'C

Forman served CO'C and Mackowsky with a subpoena on or about November 4, 2005, seeking:

- All documents concerning Century 21's submission to OneBeacon of any claim for insurance coverage arising out of the September 11, 2001 attacks on the World Trade Center;

- All communications with OneBeacon, Forman or Stephen Gerber [Century 21's insurance consultant] concerning Century 21's claim for insurance coverage arising out of the September 11, 2001 attacks on the World Trade Center;

7

- All documents and/or communications concerning Century 21's dispute with OneBeacon regarding the scope of coverage provided by the Century 21 Policy; and

- All documents concerning any payments by OneBeacon to Century 21.

(Rappaport Decl. Ex. 29.)

On November 21, 2005, CO'C objected to the subpoena in its entirety on the grounds of attorney-client privilege. CO'C did not provide a privilege log.

## Discussion

### 1. OneBeacon Has Waived Its Privilege as to Certain Documents

Rule 37(a)(2) of the Federal Rules of Civil Procedure permits a party to move for an order compelling the production of documents when the adversary fails to adequately answer a discovery request. Fed. R. Civ. P. 37(a)(2)(B). When a party seeks to compel discovery of purportedly privileged information, the burden of establishing the existence of an attorney-client privilege or work product protection rests with the party asserting the privilege/protection. See, e.g., In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (quoting United States v. Int'l Bhd. Of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997)); Treppel v. Biovail Corp., 233 F.R.D. 363, 376 (S.D.N.Y. 2006) (citing United States v.

Constr. Prod. Research, Inc., 73 F.3d 464, 473-74 (2d Cir. 1996);
In re Initial Pub. Offering Sec. Litig., 220 F.R.D. 30, 34
(S.D.N.Y. 2003)). "That burden cannot be met by 'mere conclusory
or ipse dixit assertions' in unsworn motion papers authored by
attorneys." Gulf Islands Leasing, Inc. v. Bombardier Capital,
Inc., 215 F.R.D. 466, 472 (S.D.N.Y. 2003) (quoting von Bulow by
Auersperg v. von Bulow, 811 F.2d 136, 146 (2d Cir. 1987) (quoting
In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965))); accord S.E.C. v.
Beacon Hill Asset Mgmt., 231 F.R.D. 134, 144 (S.D.N.Y. 2004)
(quoting Golden Trade, S.r.L. v. Lee Apparel Co., Nos. 90 Civ. 6291
(JMC), 90 Civ. 6292 (JMC), 92 Civ. 1667 (JMC), 1992 WL 367070, at
*5 (S.D.N.Y. Nov. 20, 1992), and citing A.I.A. Holdings, S.A. v.
Lehman Bros., 97 Civ. 4978 (LMM) (HBP), 2002 WL 31385824, at *4
(S.D.N.Y. Oct. 21, 2002); In re Copper Mkt. Antitrust Litig., 200
F.R.D. 213, 223 (S.D.N.Y. 2001)); Bowne of N.Y. City, Inc. v.
AmBase Corp., 150 F.R.D. 465, 472 (S.D.N.Y. 1993).

In all events, OneBeacon must therefore establish "the
essential elements of the privilege" being invoked. Constr. Prods.
Research, Inc., 73 F.3d at 473. In the case of the attorney-client
privilege, "a party must demonstrate that there was: (1) a
communication between client and counsel, which (2) was intended to
be and was in fact kept confidential, and (3) made for the purpose
of obtaining or providing legal advice." Id. (citing Fisher v.
United States, 425 U.S. 391, 403 (1976); United States v. Aldman,
68 F.3d 1495, 1499 (2d Cir. 1995); United States v. Abrahams, 905

9

F.2d 1276, 1283 (9th Cir. 1990)). To invoke the work product
privilege, a party "must show that the documents were prepared
principally or exclusively to assist in anticipated or ongoing
litigation." Id. (citing Fed. R. Civ. P. 26(b)(3); Bowne, 150
F.R.D. at 471).

By not providing the required information to support the
assertion of a privilege, OneBeacon has failed to meet its burden
of establishing the existence of an attorney-client or work product
privilege.

## a. Documents Prepared in the Ordinary Course of Business Are Not Protected from Discovery

Investigatory reports and materials are not protected by
the attorney-client privilege or the work-product doctrine merely
because they are provided to, or prepared by, counsel. See
Spectrum Sys. Int'l Corp. v. Chem. Bank, 581 N.E.2d 1055, 1061
(N.Y. 1991) ("a lawyer's communication is not cloaked with
privilege when the lawyer is hired for business or personal advice,
or to do the work of a non-lawyer"); see also Upjohn Co. v. United
States, 449 U.S. 383, 396, 101 S.Ct. 677, 686 (U.S. 1981) ("a party
cannot conceal a fact merely by revealing it to his lawyer");
Congregation Bnei Luzer, Inc. v. Md. Cas. Co., No. 04 Civ. 2353
(BSJ), 2004 WL 2609570, at *2 (S.D.N.Y. Nov. 17, 2004) (finding
that investigative reports prepared by or for an insurer are not
afforded work-product protection); Bank Brussels Lambert v. Credit

10

Lyonnais (Suisse) S.A., Nos. 93 Civ. 6876 (KMW), 94 Civ. 1317 (KMW), 1995 WL 598971, at *10-11 (S.D.N.Y. Oct. 11, 1995) ("Discoverability of a communication depends on its nature, rather than its source.").

In particular, "documents prepared in the ordinary course of [an] insurer's business (which by its nature, involves claim investigation and analysis)" are not protected from discovery. Tudor Ins. Co. v. McKenna Assocs., No. 01 Civ. 0115 (DAB) (JCF), 2003 WL 21488058, at *3 (S.D.N.Y. June 25, 2003) (quoting Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp., No. 00 Civ. 9212, 2002 WL 31729693, at *4 (S.D.N.Y. Dec. 5, 2000)); accord SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props. LLC, No. 01 Civ. 9291 (JSM), 2003 WL 193071, at *3 (S.D.N.Y. Jan. 29, 2003) (ordering production of notes taken by insurance adjuster at meetings where counsel was present); Mount Vernon Fire Ins. Co. v. Platt, No. 98 Civ. 8074 (CSH), 1999 WL 892825, at *2-3 (S.D.N.Y. Oct. 19, 1999) (compelling insurer to produce "investigator's report" because it contained "precisely the sort of information that one would expect an insurance company to obtain in the course of investigating a claim"); Brooklyn Union Gas Co. v. Amer. Home Assur. Co., et al., 802 N.Y.S.2d 532, 532 (N.Y. App. Div. 1st Dep't 2005) (ordering the disclosure of documents because counsel was "investigating the issue of whether coverage should be provided and the cost of such coverage"); Bertalo's Rest. Inc. v. Exch. Ins. Co., 658 N.Y.S.2d 656, 659 (N.Y. App. Div. 2d Dep't 1997) (holding

11

that reports prepared by coverage counsel which help an insurer reach a coverage decision "are made in the regular course of business"). "'Courts frequently presume that investigative reports prepared by or for an insurer <u>prior to a coverage decision</u> are prepared in the ordinary course of the insurer's business and are not afforded work-product protection.'" <u>Congregation Bnei Luzer, Inc.</u>, 2004 WL 2609570, at *2 (quoting <u>Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc.</u>, No. 96 Civ. 5590 (MJL) (HBP), 1998 WL 729735, at *6 (S.D.N.Y. Oct. 16, 1998)) (emphasis added); <u>accord</u> <u>Tudor Ins. Co.</u>, 2003 WL 21488058, at *3 ("An insurer's decision to decline coverage is typically the point at which the ordinary course of business ends and the anticipation of litigation begins."); <u>Bertalo's Rest. Inc.</u>, 658 N.Y.S.2d at 658 ("Reports . . . made before an insurance carrier has decided to deny coverage are not protected from disclosure . . . .").

OneBeacon has not denied that Century 21's loss was covered and cannot claim privilege simply because its claims investigation, measurement and payment were "performed by attorneys . . . ." <u>Brooklyn Union Gas</u>, 803 N.Y.S.2d at 532; <u>accord</u> <u>Bertalo's Rest. Inc.</u>, 658 N.Y.S.2d at 659. [1]  It is OneBeacon's burden to demonstrate that the documents created while OneBeacon adjusted,

---

[1]  By simply noting the fact that <u>Brooklyn Union Gas Co.</u> and <u>Bertalo's Rest Inc.</u> involved coverage disputes between an insurer and insured, rather than an insurer and a broker, OneBeacon has failed to sufficiently distinguish these cases from the instant action.

12

measured, and paid Century 21's insurance claim are protected by some form of privilege.  See, e.g., In re Grand Jury Proceedings, 216 F.3d at 182.  Furthermore, OneBeacon cannot satisfy that burden through unsworn statements in legal memoranda.  See Gulf Islands Leasing, Inc., 215 F.R.D. at 472.

Neither OneBeacon nor CO'C has submitted a sworn statement or presented any other evidence to disprove that the OneBeacon documents show that CO'C was a member of the "Adjust-ment/Settlement Team" and that OneBeacon was "constantly conferencing with [its] counsel" about adjustment issues. (Rappaport Decl. Ex. 7, at CO 1766; Sohn Decl. Ex. 3, at OBI 3786.) OneBeacon has merely asserted that:

All of the documents pertaining to adjustment of Century 21's "insurance claim" have been produced, including those on which Cozen was merely copied in order to keep Cozen "in the loop" on the adjustment.

(Pl./CO'C Resp. 5.)  However, this response is set forth in a memorandum and not in affidavit form by a person with knowledge.

In addition, the effort by OneBeacon and CO'C to differentiate between the adjustment of Century 21's insurance claim and any claim for policy reformation (Pl./CO'C Br. 5) is fruitless.  Since all Century 21 claims were resolved in the settlement and OneBeacon received a release (Rappaport Decl. Ex.

13

22),[2] the distinction between adjustment and policy reformation is artificial.

Accordingly, OneBeacon cannot assert the attorney-client or work product privilege in an effort to avoid producing the OneBeacon documents prepared in the ordinary course of an insurer's business.   Therefore, within twenty days or such period as the parties may agree upon or the Court may order upon good cause shown, OneBeacon will: (1) produce the adjustment file up to the date of the settlement with Century 21; (2) produce documents concerning its underwriting guidelines, policies, practices, and procedures in place during the underwriting of the Century 21 account; and (3) confirm that it has searched for documents responsive to Forman's discovery requests in the files of those employees that OneBeacon has identified in its Rule 26 disclosures and interrogatory answers as participating in the negotiation, drafting, and approval of the Century 21 Policy or otherwise having information concerning the underwriting of the Policy, or explain its failure to do so.

---

[2]     The Settlement Agreement specifically covers the inability of the parties to reach agreement concerning "whether the Policy should be reformed . . . ."  (Rappaport Decl. Ex. 22, at OBI 6929.)

14

### b.   OneBeacon Has Failed to Provide Sufficient Support for Its Claim of Privilege

When a claim of privilege is asserted in response to any means of discovery, Federal Rule of Civil Procedure 26(b)(5) [3] and Local Rule 26.2 [4] require that specific information be provided that

---

[3]   Federal Rule of Civil Procedure 26(b)(5) reads as follows:

When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

[4]   Local Rule 26.2 reads as follows:
(a) Where a claim of privilege is asserted in objecting to any means of discovery or disclosure, including but not limited to a deposition, and an answer is not provided on the basis of such assertion, . . .

    (2) The following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

        (A) For documents: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and where not apparent, the relationship of the author, addressees, and recipients to each other; . . .

(c) Where a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of such assertion, the information set forth

15

will "enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). Courts in this Circuit have refused to uphold a claim of privilege where privilege log entries fail to provide adequate information to support the claim. See, e.g., Constr. Prods. Research, Inc., 73 F.3d at 473; Bowne, 150 F.R.D. at 474-75; see also NextG Networks of NY, Inc. v. City of New York, No. 03 Civ. 9672RMBJCF, 2005 WL 857433, at *2 (S.D.N.Y. Apr. 13, 2005).

Accordingly, because OneBeacon has failed to provide sufficient information regarding certain of the documents included on the Revised OneBeacon Log, those documents as to which subject or proper identification has not been made in compliance with Local Rule 26.2(a)(2)(A) will also be produced within twenty days or such period as the parties may agree upon or the Court may order upon good cause shown.

## 2. The CO'C Documents Are Subject to Production Because the Privilege Was Waived When CO'C Failed to Provide a Privilege Log

Courts in this Circuit have also refused to uphold a claim of privilege in response to a subpoena when no privilege log has been produced in compliance with Federal Rule of Civil

---

in paragraph (a) above shall be furnished in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the court.

16

Procedure 45(d)(2)[5] and Local Rule 26.2.  See, e.g., Treppel, 2006 WL 661405, at *2 (ordering production of a privilege log and production of any documents responsive to a subpoena not identified in the log); In re Application for Subpoena to Kroll, 224 F.R.D. 326, 328-29 (E.D.N.Y. 2004) (ordering subpoenaed attorney to produce a privilege log as required by Rule 45).  Indeed, an attorney's "blanket statement" that all documents responsive to a subpoena are privileged is entirely "insufficient to prove the essential elements of the attorney-client privilege."  Kroll, 224 F.R.D. at 329.

Furthermore, as Magistrate Judge Henry B. Pitman has noted in FG Hemisphere Associates, L.L.C. v. Republique du Congo:

> As other judges in this District and I have repeatedly held, the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege.  See, e.g., Bruker v. City of New York, 93 Civ. 3848 (MGC) (HBP), 2002 WL 484843 at *5 (S.D.N.Y. Mar. 29, 2002); A.I.A. Holdings, S.A. v. Lehman Bros., Inc., 97 Civ. 4978 (LMM) (HBP), 2000 WL 782947 at *2 (S.D.N.Y. June 16, 2000); Large v. Our Lady of Mercy Med. Ctr., 94 Civ. 5986 (JGK) (THK), 1998 WL 65995 at *4 (S.D.N.Y. Feb. 17, 1998); Hurst v. F.W. Woolworth Co., 95 Civ. 6584 (CSH), 1997 WL 61051 at *6 (S.D.N.Y. Feb. 11,

---

[5]   Federal Rule of Civil Procedure 45(d)(2) reads as follows:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

17

1997); <u>PK Finans Int'l Corp. v. IBJ Schroeder Leasing Corp.</u>, 93 Civ. 5375 (SAS) (HBP), 1996 WL 525862 at *3-*4 (S.D.N.Y. Sept. 17, 1996); <u>John Labatt Ltd. v. Molson Breweries</u>, 93 Civ. 75004 (RPP), 94 Civ. 71540 (RPP), 1995 WL 23603 at *1 (S.D.N.Y. Jan. 20, 1995), <u>appeal transferred sub nom.</u>, <u>Dorf & Stanton Communications, Inc. v. Molson Breweries</u>, 56 F.3d 13 (2d Cir. 1995), <u>aff'd</u>, 100 F.3d 919 (Fed. Cir. 1996); <u>Smith v. Conway Org., Inc.</u>, 154 F.R.D. 73, 76 (S.D.N.Y. 1994); <u>Allstate Life Ins. Co. v. First Trust N.A.</u>, 92 Civ. 4865 (SWK), 1996 WL 138844 at *3 (S.D.N.Y. Apr. 27, 1993); <u>Bank v. Mfrs. Hanover Trust Co.</u>, 89 Civ. 2946 (MJL), 1990 WL 155591 at *2 (S.D.N.Y. Oct. 9, 1990); <u>Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc.</u>, 130 F.R.D. 28, 32 (S.D.N.Y. 1990); [FN1] <u>see also</u> <u>Sheikan v. Lenox Hill Hosp.</u>, 98 Civ. 6468 (WHP), 1999 WL 386714 at *3 (S.D.N.Y. June 11, 1999).

> FN1.   Although there is authority reaching a contrary result and limiting the remedy to the belated preparation of the index of withheld documents, I do not find those cases persuasive. . . . .

No. 01 Civ. 8700 (SAS) (HBP), 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005).  Although Judge Pitman was referring to Rule 26(b)(5), Fed. R. Civ. P., other courts in this Circuit have applied the same "specify or waive" rule to assertions of a privilege or protection in objection to a subpoena, pursuant to Rule 45(d)(2), Fed. R. Civ. P.  <u>See</u>, <u>e.g.</u>, <u>Kroll</u>, 224 F.R.D. at 328 ("Rule 45 requires that the party claiming a privilege prepare a privilege log. . . . Failure to submit a privilege log may be deemed a waiver of the underlying privilege claim."); <u>Labatt Ltd. v. Molson Breweries</u>, Nos. 93 CV 75004, 94 CV 71540 (RPP), 1995 WL 23603 (S.D.N.Y. Jan. 20, 1995), <u>aff'd</u>, <u>Dorf & Stanton Commc'ns, Inc.</u>, 100 F.3d 919, 923 (Fed. Cir. 1997) (upholding determination that privilege had been waived due to failure to satisfy Rules 45(d)(2) and 26(b)(5), Fed. R. Civ. P.); <u>see also</u> <u>In re Grand Jury Subpoena</u>, 274 F.3d 563, 575-

76 (1st Cir. 2001) (stating that a "party that fails to submit a privilege log" pursuant to Fed. R. Civ. P. 45(d)(2) "is deemed to waive the underlying privilege claim").

CO'C has thus waived any privilege with respect to its withheld documents by failing to properly identify them on a privilege log in compliance with Rule 45(d)(2), Fed. R. Civ. P., and Local Rule 26.2. Without citing to any authority, CO'C simply contended in its opposition papers that it "had no obligation to provide Forman with a privilege log." (Opp'n Mem. 23.)

Under the above cited authorities, it is appropriate to enforce the rules for properly asserting a privilege and to compel production of all CO'C files, particularly those documents leading up to the settlement with Century 21. Although it is within the Court's discretion to grant leniency as to documents which would be covered by the attorney-client privilege except for the waiver noted above, to assume such leniency is risky.

Nonetheless, CO'C will not be compelled at this time to produce documents subject to the attorney-client or work product privilege that were created after March 23, 2003, or in connection with the initiation of this action, conditional, however, upon the submission of an appropriate privilege log within twenty days or such period as the parties may agree upon or the Court may order upon good cause shown. Such privilege log shall comply with Rule

19

45(d)(2), Fed. R. Civ. P., and Local Rule 26.2. Any documents created prior to March 23, 2003, and not in connection with the initiation of this action and any documents not properly entered on the privilege log will be produced within such period as the parties may agree upon or the Court may order upon good cause shown.

## 3. Production on the Basis of the "At Issue" or "Fairness" Doctrines Is Denied

Although Forman has contended that the "at issue" and "fairness" doctrines apply as exceptions to the normal rules of privilege in this case (Supp. Mem. 12-20), neither doctrine is applicable here.

### a. The "At Issue" Doctrine

The implied waiver of the attorney-client privilege and the work product doctrine known as the "at issue" doctrine was first articulated in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975). Although the three-factor test outlined in Hearn has been widely accepted and applied,[6] the exact boundaries of the "at

---

[6] The Hearn three-factor test is as follows: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." Hearn, 68 F.R.D. at 581.

issue" doctrine have been the subject of significant conflict and debate.   See, e.g., Allen v. West Point-Pepperell Inc., 848 F. Supp. 423, 429-30 (S.D.N.Y. 1994).

Nevertheless, courts have refused to invade the attorney-client privilege under this doctrine in a number of circumstances. See, e.g., Allen, 848 F. Supp. at 429-30 (finding defendants had failed to meet the "particularly high burden they bear" in demonstrating waiver of the privilege pursuant to the at issue doctrine) (internal quotation omitted); Chase Manhattan Bank N.A. v. Drysdale Sec. Corp., 587 F. Supp. 57, 59 (S.D.N.Y. 1984) (same). For example, in N. River Ins. Co. v. Phila. Reinsurance Corp., 797 F. Supp. 363 (D.N.J. 1992), the court limited application of the "at issue" doctrine to situations where a party puts the contents of an attorney-client communication at issue by asserting a claim or defense it intends to prove through disclosure of that communi-cation.   There, the court found that merely placing the broad question of reinsurance coverage in issue did not make it fair game for the defendant reinsurer to discover confidential attorney-client communications.   Id. at 370-71.   In another example, where the relevant question has been not what legal advice was given or what information was conveyed to counsel, but rather what facts the party knew and when, courts have held that the waiver of the privilege should not be applied.   See Allen, 848 F. Supp. at 430-31; Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc., 111 F.R.D. 76, 81 (S.D.N.Y. 1986).

21

In support of its argument that the "at issue" doctrine applies, Forman relies principally on the case of DH Holdings Corp. v. Marconi Corp. PLC, 809 N.Y.S.2d 404 (N.Y. Sup. Ct. 2005). However, DH Holdings Corp. is factually distinguishable in that the plaintiff in that case sought indemnification for its costs, attorneys' fees and expenses in investigating, defending and settling a patent infringement case. Hence, the plaintiff itself placed directly at issue the work performed by its attorneys.

In asserting its claims for negligence, breach of contract, breach of fiduciary duty, indemnification and contribution, OneBeacon has not relied on "advice of counsel" to supply an element of any claim, nor has it injected an "advice of counsel" defense in the case. See, e.g., Ohio Cas. Group v. Am. Int'l Specialty Lines Ins. Co., No. 04 Civ. 10282 (LAP) (DF), 2006 WL 2109475, at *4 (S.D.N.Y. July 25, 2006) ("An at issue waiver will commonly occur when a defendant asserts an advice-of-counsel defense . . . .") (internal quotation omitted); Am. Steamship Owners Mut. Prot. & Indemnity Assoc. v. Alcoa Steamship Co., 232 F.R.D. 191, 198-99 (S.D.N.Y. 2005) (same). As a result, implication of the "at issue" doctrine is not clearly indicated.

Forman also argues that because the "reasonableness" of OneBeacon's settlement is at issue, it is entitled to discover documents which may expose the underlying motives of OneBeacon in settling the claim. Although "reasonableness" is an element of

22

indemnification, "the test of reasonableness applies not to the fact of liability but only to the amount that may be paid by way of settlement of such liability." <u>Feuer v. Menkes Feuer, Inc.</u>, 187 N.Y.S.2d 116 (N.Y. App. Div. 1959).   The   reasonableness of a settlement generally rests on the size of the possible recovery and the degree of probability of the claimant's success.   <u>See</u>, <u>e.g.</u>, <u>Luria Bros. & Co., Inc. v. Alliance Assurance Co., Ltd.</u>, 780 F.2d 1082, 1091 (2d Cir. 1986) (quoting <u>Damanti v. A/S Inger</u>, 314 F.2d 395, 397 (2d Cir.), <u>cert. denied</u>, 375 U.S. 834 (1963)); <u>Uniroyal, Inc. v. Home Ins. Co.</u>, 707 F. Supp. 1368, 1379 (E.D.N.Y. 1988). The content of any legal advice would therefore not necessarily be at issue in determining the reasonableness of any settlement.

### b.   The "Fairness" Doctrine

The fairness doctrine is based on the principle that where a party selectively discloses privileged information during litigation and withholds other privileged materials relating to an issue in litigation, principles of fairness may require more complete disclosure.   <u>See</u>, <u>e.g.</u>, <u>In re Grand Jury Proceedings</u>, 219 F.3d 175, 182 ("a party cannot partially disclose privileged communications . . . and then shield the underlying communications from scrutiny by the opposing party"); <u>In re von Bulow</u>, 828 F.2d 84, 101 (2d Cir. 1987) ("These considerations -- which underlie 'the fairness doctrine' - aim to prevent prejudice to a party and distortion of the judicial process that may be caused by the

23

privilege-holder's selective disclosure during litigation of otherwise privileged information."). In <u>Granite Partners L.P. et al. v. Bear, Stearns & Co. Inc., et al.</u>, 184 F.R.D. 49 (S.D.N.Y. 1999), this Court stated that the fairness doctrine "may be imposed when 'the privilege-holder has attempted to use the privilege as both 'sword' and 'shield.''" <u>Id.</u> at 54 (quoting <u>In re von Bulow</u>, 828 F.2d at 102, and citing <u>In re Kidder, Peabody Sec. Litig.</u>, 168 F.R.D. 459, 473 (S.D.N.Y. 1996); <u>In re Leslie Fay Cos., Inc. Sec. Litig.</u>, 161 F.R.D. 274, 282 (S.D.N.Y. 1995)).

In addition, "'[f]airness considerations may also come into play where the party asserting the privilege makes factual assertions, the truthfulness of which may be assessed only by an examination of the privileged communications or documents.'" <u>Am. Steamship Owners Mut. Prot. & Indemnity Assoc., Inc.</u>, 232 F.R.D. at 199 (quoting <u>Falise v. Am. Tobacco Co.</u>, 193 F.R.D. 73, 84 (E.D.N.Y. 2000)).

Neither OneBeacon nor CO'C appear to have selectively withheld any documents on the basis of content. Furthermore, OneBeacon is already being required to produce the claims file up to the date of the settlement. It therefore follows that the fairness doctrine has no applicability in this matter.

24

**Conclusion**

For the reasons outlined above, the motion is granted in part and denied in part. The adjustment file up to the date of the settlement with Century 21 and the documents for which OneBeacon insufficiently asserted privilege will be produced within twenty (20) days or such period as the parties may agree upon or the Court may order upon good cause shown. In addition, leave is granted to CO'C to submit an appropriate and compliant privilege log within twenty (20) days or such period as the parties may agree upon or the Court may order upon good cause shown or, alternatively, to produce the subpoenaed documents.

It is so ordered.

New York, NY
December  /3  , 2006

ROBERT W. SWEET
U.S.D.J.

25